UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20537-Civ-MORENO/TORRES

AT&T MOBILITY LLC and AT&T
MOBILITY II LLC,

        Plaintiffs,

v.

DYNAMIC CELLULAR CORPORATION, a
Florida corporation, LEONARDO A.
SCHAMY; JOHN DOES 1-50; XYZ
COMPANIES 1-50,

        Defendants.
_____/

## OMNIBUS ORDER

This matter is before the Court on the following pending motions following the reference of this case for all pretrial matters: Defendants' Motion for Partial Relief from Omnibus Order (DE 36) and Incorporated Memorandum of Law [D.E. 46]; Plaintiffs' Motion for an Order to Show Cause why Defendants Should Not be Held in Civil Contempt and Incorporated Memorandum of Law [D.E. 47]; Plaintiffs' Motion to Strike Amended Affirmative Defenses and Incorporated Brief [D.E. 56]; Defendants' Motion for Protective Order Against Plaintiffs' Improper Notice of Inspection and Depositions Without Reasonable Notice [D.E. 58]; and Defendants's Motion to Extend Certain Pre-Trial Deadlines (But Not Trial) [D.E. 59]. It is hereby ORDERED and ADJUDGED as follows:

    1.    Defendants' Motion for Partial Relief from Omnibus Order (DE 36) and Incorporated Memorandum of Law [D.E. 46] is **DENIED**. As background, the Omnibus Order granted partial relief with respect to Plaintiffs' motion to preserve evidence. We set forth

certain obligations on the part of Defendants, one of which was to digitally photograph phones before selling them:

> Defendants may for now continue to market such AT&T GoPhones in the ordinary course, but subject to the additional requirement that *each and every* such telephone be photographed in digital, color format upon Defendants' receipt in the unaltered condition, and upon Defendants' shipment of the product in the altered condition. Such digital pictures shall be periodically copied and delivered to Plaintiffs, without further Order necessary, every thirty days.

[D.E. 36 at 6]. Requiring Defendants to photograph the AT&T GoPhones prior to sale was an appropriate balance between two competing interests: Plaintiffs' desire to preserve potential evidence, and Defendants' need to continue running its business. The only viable alternative was to enjoin Defendants from selling the GoPhones, but such relief was not warranted at that time. Now, Defendants seek relief from the Omnibus Order "to the extent it requires that Defendants photographs Authorized Phones." [D.E. 46 at 7]. Defendants only raise two arguments in support of its motion, and we reject both.

First, Defendants argue that they "have been forced to unnecessarily photograph thousands of telephones at great labor and expense in a futile exercise that affords Plaintiffs no protection." *Id.* at 5. However, Defendants provide no evidentiary support as to the purported "labor and expense" of taking digital photographs of AT&T GoPhones prior to sale. Notably, the Omnibus Order was entered on May 5, 2008, and Defendants did not file this motion until June 17, 2008. The fact that Defendants were able to operate their business for six weeks (indeed, over three months at this point) certainly cuts against their argument that the Omnibus Order is overly burdensome. Moreover, the contention that AT&T receives no protection from these photos is simply false. The photographs are critical to AT&T because they provide the opportunity to track the trademarks and International Mobile Equipment Identities ("IMEIs") of the phones allegedly trafficked by Defendants. And, assuming the

allegations in the Complaint are true, these photographs are relevant to the claim that Defendants are involved in an illegal bulk resale scheme. [D.E. 53 at 4].

Second, Defendants raise the curious argument that "Plaintiffs refuse to acknowledge that they have no objection to Defendants selling the Authorized Phones." According to the motion, the only phones in Defendants' possession are 13,870 Authorized Phones that were purchased through authorized AT&T auctions. To the contrary, Plaintiffs insist that a significant percentage of Defendants' inventory consists of AT&T GoPhones that were *not* purchased through authorized AT&T auctions. *See Declaration of Jury Cavalieri* [D.E. 53-2 at ¶ 5]. Accordingly, the only way to ensure the preservation of evidence is to require Defendants to photograph *all* AT&T GoPhones.

Although we deny Defendants' Motion, the Court is open to alternative suggestions as to how best to preserve the evidence of the GoPhones sold by Defendants. In the event Defendants can come up with a less intrusive method of preserving the evidence, they are free to file a motion for reconsideration. Until that time, however, Defendants are to continue to abide by the Court's Omnibus Order.

2. Plaintiffs' Motion for an Order to Show Cause why Defendants Should Not Be Held in Civil Contempt and Incorporated Memorandum of Law [D.E. 47] is **DENIED WITHOUT PREJUDICE**. In addition to the requirement that all GoPhones be photographed prior to sale, the Omnibus Order also prohibited Defendants from distributing, shipping, or forwarding any AT&T GoPhones until an inventory of such phones was provided to Plaintiffs. On May 22, 2008, an investigator hired by AT&T went to Defendants' store, and was sold five Motorola C139 phones. *See Declaration of Warren Gerstein* [D.E. 47-2 at ¶ 5]. The following day, on May 23, 2008, Defendants provided AT&T with the court-ordered inventory list. The inventory list did not include the phones purchased by the AT&T investigator. After running the IMEIs through AT&T's database, it was confirmed that the phones sold to the investigator

were originally GoPhones. *See Declaration of Judy Cavalieri* [D.E. 47-3 at ¶ 5]. In light of the investigator's discovery, Plaintiffs filed a motion for civil contempt, and their argument is twofold: (i) Defendants violated the Omnibus Order by selling AT&T GoPhones prior to providing AT&T with an inventory; (ii) the inventory that Defendants ultimately provided was incomplete.

Based on the evidence before the Court, holding Defendants in civil contempt is unwarranted. Defendants acknowledge that they sold five Motorola C139 telephones, and that the sale took place before they provided Plaintiffs with the required inventory of GoPhones. Defendants also admit (or at least they do not refute) that the phones they sold turned out to be AT&T GoPhones. However, according to Defendants, these five phones did not bear Plaintiffs' packaging, GoPhone marks or GoPhone software. *See Declaration of Leonardo A. Schamy* [D.E. 51-4 at 2-3]. Defendants maintain that it was impossible to recognize these phones as GoPhones based solely on a visual inspection; Mr. Schamy apparently does not have access to a database from which he could compare an IMEI number to determine whether a Motorola C139 phone originated from AT&T or ever bore the GoPhone mark. *Id.*

It is unclear whether the Motorola C139 phones should have been, or could have been identified as GoPhones. Notably, Ms. Cavalieri, the Vice President in the Marketing Group of AT&T Mobility LLC, states in her declaration that she had to run the phones' IMEIs through the AT&T system to confirm that the phones were originally GoPhones. *See Declaration of Judy Cavalieri* [D.E. 47-3 at ¶ 5]. This fact certainly cuts against Plaintiffs' claim that Defendants could have identified the Motorola C139s as GoPhones. Without additional evidence that Defendants intentionally violated the Omnibus Order, we decline to hold the Defendants in civil contempt.

As to Plaintiffs second argument, they did not sufficiently establish that Defendants violated the court-ordered obligation to provide "complete inventory records, evidencing at a

minimum receipt and redistribution" of GoPhones in Defendants' possession. Defendants rely primarily on the fact that the Motorola C139 phones sold on May 22, 2008 were not listed on the May 23, 2008 inventory list. However, if Defendants did not know the Motorola G139 phones were GoPhones, there would have been no reason to include these five Motorola G139s on the inventory list. To the extent Plaintiffs take issue with the inventory list as a whole, the motion lacks specificity. For instance, Plaintiffs argue that "Defendants [failed] to disclose to AT&T critical information ... including the quantity of phones sold, to whom the phones were sold, when the phones were sold, etc." [D.E. 57 at 2]. But rather than reference the inventory list or an affidavit supporting this assertion, Plaintiffs merely cite to the Omnibus Order. We already know what the Omnibus Order requires; we need to know how Defendants purportedly violated it.

If Plaintiffs can establish that Defendants intentionally sold the Motorola C139 phones in violation of this Court's Omnibus Order, i.e. that Defendants knew the Motorola C139 phones were GoPhones, Plaintiffs are granted leave to re-file a motion for contempt, and we will revisit the matter. At this juncture, however, Plaintiffs request to hold Defendants in civil contempt is denied.

3.  Plaintiffs' Motion to Strike Amended Affirmative Defenses and Incorporated Brief [D.E. 56] is **GRANTED IN PART**. On May 8, 2008, Plaintiffs filed a motion to strike Defendants' affirmative defenses, alleging that the defenses: (i) did not meet the minimum threshold require for notice pleading; (ii) did not identify the claim to which each defense applied; and (iii) were legally insufficient. On May 20, 2008, Defendants filed a notice of non-objection to Plaintiffs' Motion, and agreed to file amended affirmative defenses; Defendants filed amended affirmative defenses one month later. *See Affirmative Defenses* [D.E. 49]. On July 10, 2008, Plaintiffs filed this motion seeking to strike the fourth and fifth affirmative defenses. As of the date of this Order, Defendants have not filed a response.

The fourth affirmative defense states that "Plaintiffs' claim are barred in whole or in part based on the exemption to the Digital Millennium Copyright Act, as codified at 71 FE 68472 (Nov 27, 2006).  The Librarian of Congress ... issued a specific exemption allowing disabling of firmware that enables wireless telephone handsets to connect to a wireless telephone communication network." [D.E. 49 at 3].  The fourth affirmative defense does not specify which of AT&T's 12 claims the defense supposedly bars.  The lack of specificity is particularly important given that AT&T has not brought a single copyright claim.  Therefore, Plaintiffs cannot reasonably be expected to counter this affirmative defense.  Coupled with the failure to respond to Plaintiffs' Motion, we find good cause to strike the Fourth Affirmative Defense.[1]

The fifth affirmative defense states that "Plaintiffs' claims are barred in whole or in part by virtue of the "first sales" doctrine applicable in trademark infringement actions.  Plaintiffs' right to control the distribution or use of their products ended after its first sale of its products." [D.E. 49 at 3].  The "first sale" doctrine provides that resale by the first purchaser of an original article under the producer's trademark is not trademark infringement.  *See, e.g., Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1249 (S.D. Fla. 2006).  Put another way, the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product.  *Davidoff & CIE, S.A. v. PLD Intern. Corp*, 263 F.3d 1297, 1301 (11th Cir. 2001).  Plaintiffs' gripe is that the fifth affirmative defense fails to

---

[1] As a practical matter, this "defense" may not have survived a motion for summary judgment.  Federal Regulation 68472 amended 37 C.F.R. § 201.40(b), and set forth a limited exemption for six classes of copyrighted works, including computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.  37 C.F.R. § 201.40(b)(5).  In a recent case out of the Middle District of Florida, the Court permanently enjoined defendants from engaging in the exact conduct alleged in this case, and held that the exemption in section 201.40(b) was inapplicable.  *See TracFone Wireless, Inc. v. Dixon*, 475 F. Supp. 2d 1236, 1238 (M.D. Fla. 2007).

identify the particular count or counts in AT&T's Complaint to which the defense purportedly applies.

Unlike the fourth affirmative defense, however, the Court finds that the Defendants have provided fair notice to the Plaintiffs. The fifth affirmative defense refers to an established defense in trademark law, and Plaintiffs have been provided with enough information to analyze the defense. Notwithstanding Defendants' failure to respond to Plaintiffs' Motion, we deny the request to strike the Defendants' fifth affirmative defense.

4.   Defendants' Motion for Protective Order Against Plaintiffs' Improper Notice of Inspection and Depositions Without Reasonable Notice [D.E. 58] is hereby **DENIED AS MOOT**. According to Defendants' Reply, on August 6, 2008, the 30(b)(6) deposition duces tecum for Dynamic and the deposition for Mr. Schamy took place as scheduled. [D.E. 64-2 at 2]. With respect to the inspection, the parties have agreed to conduct the inspection on August 22, 2008.

5.   Defendants's Motion to Extend Certain Pre-Trial Deadlines (But Not Trial) [D.E. 59] is **GRANTED IN PART**. Defendants maintain that as a result of the parties' good faith settlement efforts, "the parties cannot reasonably complete discovery within the deadlines set forth in this Court's Scheduling Order." They also suggest that Plaintiffs will not be prejudiced if this Court extends the pre-trial deadlines. This is hardly good cause. Fed. R. Civ. P. 16(b). Moreover, we are troubled by the fact that Defendants did not propound discovery until *after* filing this motion.

Still, it appears as though both parties have dragged in their respective discovery efforts. The most equitable remedy is a brief extension of the Scheduling Order. Accordingly, the Scheduling Order is modified as follows:

    Conference and selection of a mediator:    August 18, 2008

    Completion of all discovery:    September 5, 2008

  Motions for Summary Judgment:   September 12, 2008

  Pretrial Motions (motions in limine; *Daubert*): September 19, 2008

  Mediation:   September 24, 2008

All other deadlines in the Scheduling Order remain the same.

  **DONE AND ORDERED** in Chambers, Miami, Florida, this 15th day of August, 2008.

          /s/   Edwin G. Torres
          EDWIN G. TORRES
          United States Magistrate Judge